FILED

2016 Jan-26  AM 07:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | |
|---|---|
| A. C. GLOVER, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | )   Case No.  6:15-cv-00651-AKK-HGD |
| | ) |
| CORIZON MEDICAL SERVICES, | ) |
| et al., | ) |
| | ) |
| Defendants | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiff, A.C. Glover, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States were abridged during his incarceration at Bibb County Correctional Facility in Brent, Alabama.  (Doc. 1).  He names the following entity and individuals as defendants:  Corizon Medical Services, Medical Director David Pavlakovic, Medical Services Director Ms. Clabo, Director of Nursing Ms. Kirk, and Nurse Christian.  (*Id.* at 1, 3).  The plaintiff seeks a jury trial, appointment of counsel, and declaratory and monetary relief. (*Id.* at 8). In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was

referred to the undersigned magistrate judge for a preliminary report and recommendation.   *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I. Standard of Review

The Prison Litigation Reform Act, 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against government officers or employees.  28 U.S.C. § 1915A.  The court must dismiss the complaint or any portion thereof that it finds frivolous, malicious, seeks monetary damages from a defendant immune from monetary relief, or which do not state a claim upon which relief can be granted.  *Id*. Moreover, the court may *sua sponte* dismiss a prisoner's complaint prior to service. *See* 28 U.S.C. § 1915A(a).

Under § 1915A(b)(1) and § 1915(e)(2)(B)(I), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, *id.*, 490 U.S. at 327, or the claim seeks to enforce a legal right that clearly does not exist.  *Id.*

Moreover, a complaint may be dismissed pursuant to 28 U.S.C. § 1915A (b)(1) for failure to state a claim upon which relief may be granted.  A review on this ground is governed by the same standards as dismissals for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See Jones v. Bock*, 549 U.S. 199, 215

(2007).  In order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 557 (2007) (second brackets in original).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Similarly, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted.  *Jones*, 549 U.S. at 215.

*Pro se* pleadings "are held to a less stringent standard than pleadings drafted by attorneys" and are liberally construed.  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).  However, they still must allege factual allegations that "raise a right to relief above the speculative level." *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted).

## II.  Procedural History

On June 22, 2015, the plaintiff was notified his complaint was deficient, and directed to correct the deficiencies in the following manner:

The plaintiff must provide the complete names of all defendants or as much of the names as known, and any identifying information (such as gender, race, approximate age, job title or position), and a complete address for each defendant.  The plaintiff must identify those persons as defendants both in the heading and in Part III of the complaint.   Label your response "Amended Complaint" and write "6:15-cv-651-AKK-HGD" at the top of each page.

The plaintiff has failed to set forth his claims in sufficient detail.  In the amended complaint, the plaintiff should name as defendants only those persons who violated his constitutional rights.  The plaintiff should also state clearly how each named defendant violated his constitutional rights, the date(s) on which the incident(s) occurred, and where the incident(s) occurred.   THE PLAINTIFF MUST CLEARLY SET FORTH THE **FACTS** CONCERNING ANY INCIDENT ABOUT WHICH HE COMPLAINS.   The plaintiff is ADVISED that conclusory and general assertions are not sufficient to state a claim upon which relief under § 1983 can be granted.  *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).   The amended complaint must include all of the plaintiff's claims in this action; IT SHOULD NOT REFER BACK TO THE ORIGINAL COMPLAINT.   The plaintiff is ADVISED that the Court will consider **only** the claims set forth in the amended complaint.  After completing the new complaint form, the plaintiff should mail it to the Clerk of the Court.

(Doc. 6 at 1-2).  Although the plaintiff clarified the identity of the defendants he intended to sue (doc. 7), he did not file an amended complaint addressing the lack of sufficient detail in his complaint.

### III.  Analysis

**A.**     **Bibb County Correctional Facility**

    **1.**     **Factual Allegations**

Prior to the hip replacement surgery giving rise to the allegations in the complaint, the plaintiff had a heart "defibrillator implanted by St. Jude Medical Center." (Doc. 1 at 4).  In January 2015, the plaintiff had hip replacement surgery. (*Id.*).  When he returned to Bibb County Correctional Facility (BCCF), the plaintiff was placed in the health care unit.  (*Id.*).

While in  that unit, the plaintiff "complained several times to Nurse Christian" that he was to be provided a "heart monitor to monitor the discharges of my defibrillator," but she ignored his request and told him "to put in a sick call slip." (*Id.* at 5).  He "complain[ed] to Ms. Clabo and Ms. Kirk" that the physician at St. Jude's stated he "should receive a heart monitor to monitor [his] defibrillator charges," but Clabo and Kirk refused to help him and declared "St. Jude should have provided" the monitor.  (*Id.*).  Moreover, Dr. Pavlakovic "never visited" the plaintiff after his hip surgery and never provided the plaintiff with a monitor, even though he was aware of the plaintiff's defibrillator implant.  (*Id.*). The plaintiff also was not provided physical therapy or a physical therapist.  (*Id.* at 6).

Because he had no "nursing assistance to help" him "go to the showers or bathroom," the plaintiff "fell down several times in the shower and [when] trying to get in bed or out of bed." (*Id.* at 5). He filed grievances with defendants Clabo, Christian, and Kirk and asked "to see a doctor." (*Id.*). He declares his grievances met with no response and were ignored, but admits "Clabo said she told" Dr. Pavlakovic about his complaint and that Pavlakovic "would see [him] in time." (*Id.* at 5-6). The plaintiff also admits he was "verbally told" to "let the inmates help" him, but complains they "are <u>not trained or insured</u> – and [he] couldn't afford to pay them!!" (*Id.*). Finally, the plaintiff admits he "was . . . given medications" when he complained of falling, but declares he was never examined and the medicine "caused [him] to remain s[e]dated for hours." (*Id.* at 6).

The plaintiff alleges "it is a[n] undisputed fact that the aforementioned defendants will not physically touch a[n] African American patient that is housed in the infirmary at Bibb County and when I filed a formal grievances, I was transferred to Hamilton [Aged & Infirm Correctional Facility], my current location." (*Id.* at 6-7). He claims the defendants were "motivated by racial indifference that cause[d] them to be indifferent to [his] medical needs[,]" in violation of the Eighth Amendment's proscription against cruel and unusual punishment. (*Id.* at 4).

## 2.      Eighth Amendment Deliberate Indifference to Serious Medical Needs

"Medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting *Rogers v. Evans*, 792 F2d 1052, 1058 (11th Cir. 1986)).  The conduct of prison officials must run counter to "evolving standards of decency" or involve the "unnecessary and wanton infliction of pain" to be actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) (footnote omitted).

Therefore, negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment. *Estelle*, 429 U.S. at 106; *McElligot v. Foley*, 182 F.3d 1248 (11th Cir. 1999).  Likewise, a mere difference of opinion between an inmate and the prison medical staff or between members of the medical staff as to treatment or diagnosis will not, alone, give rise to a cause of action under the Eighth Amendment. *Harris*, 941 F.2d at 1505.

With the foregoing in mind, the Eighth Amendment standard utilized to determine

> [d]eliberate indifference to a detainee's [or prisoner's] serious medical needs requires 1) an objectively serious medical need and 2) a defendant who acted with deliberate indifference to that need. *See Burnette* [*v. Taylor*], 533 F.3d [1325] at 1330 [(11th Cir. 2008)]. A "serious medical need" is "one that is diagnosed by a physician as requiring treatment or

one that is so obvious that a lay person would recognize the need for medical treatment." *Id.* For liability, the defendant must 1) have subjective knowledge of a risk of serious harm, 2) disregard that risk, and 3) display conduct beyond gross negligence. *Id.*

Deliberate indifference may result not only from failure to provide medical care at all, but also from excessive delay: "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

*Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010) (alterations supplied).

### a.   The individual medical defendants

### i.   Defibrillator Charge Monitor

The plaintiff alleges he told defendant Christian several times that he needed an implant discharge monitor, but she told him to file a sick call slip. (Doc. 1 at 5). When he complained to defendants Clabo and Kirk, and told them the St. Jude's Medical Center medical physician stated he "should receive a heart monitor to monitor" the defibrillator charges from his implant, they declared "St. Jude should have provided" the monitor. (*Id.*). Dr. Pavlakovic also never provided such a monitor. (*Id.*). From this platform, the plaintiff declares each of these defendants were deliberately indifferent to his serious medical need.

Certainly, the plaintiff suffered from a serious medical need at some earlier, unknown time, when it was determined he needed a surgically implanted cardiac defibrillator.  The serious medical need *complained* about, however, is the failure of defendants Christian, Clabo, Kirk, and Pavlakovic to provide the plaintiff with a defibrillator charge monitor after his hip replacement surgery.  For the reasons that follow, these facts do not establish the individual defendants were deliberately indifferent to a serious medical need.

Although defendants Christian, Clabo, Kirk, and Pavlakovic did not give him a monitor, the plaintiff does not allege they failed to ensure the implant and his cardiac health were regularly checked by other means.  This is particularly true since the plaintiff admits he was housed in the BCCF infirmary after his surgery.  The plaintiff also does not allege he had any difficulties with the device that caused him to suffer any harm.  As such, he cannot establish either a serious medical need or deliberate indifference based solely on the failure to provide him a monitor.  At best, the plaintiff's allegations boil down to a difference of opinion between medical professionals as to post-operative treatment methods which, in the absence of any other facts, cannot give rise to a cause of action under the Eighth Amendment against defendants Christian, Clabo, Kirk, and Pavlakovic.  *Harris*, 941 F.2d at 1505.  This claim is due to be dismissed.

### ii.    Hip Replacement

After the plaintiff's January 2015 hip replacement surgery, he was housed in BCCF's health care unit, but Dr. Pavlakovic "never visited" him and he was not provided physical therapy. (Doc. 1 at 4-6). The plaintiff also "fell down several times in the shower and [when] trying to get in bed or out of bed" because he had no nursing assistance. (*Id.* at 5). He "complained of falling several times to . . . defendants Clabo, Christian and Kirk, and that [he] needed to see a doctor." (*Id.* at 6). Defendant "Clabo said she told" Dr. Pavlakovic about his complaint, and Pavlakovic "would see [him] in time." (*Id.*). The plaintiff was "verbally told" he "should let the inmates help" him, but complains inmates are not trained or insured, and he could not afford to pay them for assistance. (*Id.* at 5-6). The plaintiff was never examined by anyone after he complained of falling, and asserts it is an "undisputed fact" defendants Pavlakovic, Clabo, Kirk, and Christian will not touch African-American inmates at BCCF. (*Id.* at 6). Still, he admits that after he complained of falling, he was given medication that sedated him for several hours. (*Id.*).

The plaintiff does not reveal how long he remained at St. Jude's after his January 2015 hip surgery, but it is clear he remained in the BCCF infirmary until he was transferred to Hamilton A & I, where he signed his April 13, 2015, complaint. (Doc. 1 at 4, 7). The plaintiff's medical treatment immediately following hip

replacement surgery constitutes a serious medical need, and the fact that he was housed in the BCCF infirmary during the applicable time period bolsters this conclusion.

The plaintiff asserts defendant Pavlakovic was deliberately indifferent to his post-surgical recovery because he did not visit the plaintiff in the BCCF infirmary. However, other than to assert Pavlakovic should have consulted with him because he had his defibrillator, the plaintiff presents no facts demonstrating Pavlakovic knew he was not receiving appropriate follow-up care in the infirmary and refused to assist him, or that he was harmed by Pavlavokic's lack of in-person involvement in any way.

The plaintiff also complains he was not afforded physical therapy or a physical therapist while in the BCCF infirmary, but does not allege the St. Jude's physician directed therapy be performed by a specialist or that he could not perform physical therapy exercises on his own.  The plaintiff does not identify any defendant whose action (or inaction) regarding physical therapy displayed deliberate indifference, nor has he described any harm to his recovery due to lack of physical therapy.

Next, the plaintiff alleges he fell several times in the shower or getting in and out of bed because defendants Christian, Clabo and Kirk refused to provide him nursing assistance with these tasks.  He complains that his grievances about the matter were not responded to, but at the same time admits he was told to allow inmates in the

infirmary help him. It is unclear whether these inmates were authorized to help infirmary inmates as part of a prison assignment or whether they were infirmary inmates themselves. Regardless, such a task does not require any expert training. The plaintiff has not demonstrated the defendants were deliberately indifferent to this medical need simply because they instructed him to let other inmates help him. The plaintiff did not want to use inmate assistance because they were not insured, but that fact is irrelevant to the question of the defendants' purported indifference. The plaintiff also asserts he did not have enough money to pay for inmate assistance, but does not allege that payment was required or that he ever asked an inmate for help but was refused because of payment demands.

The plaintiff cannot demonstrate deliberate indifference by the defendants because he desired nursing assistance as opposed to inmate assistance for the pertinent tasks. This claim boils down to a mere difference of opinion between the plaintiff and the prison medical staff as to who should help the plaintiff ambulate and does not give rise to a cause of action under the Eighth Amendment. *Harris*, 941 F.2d at 1505. Additionally, while he complains he was not examined after the falls, the plaintiff does not describe any injuries he suffered or contend the injuries were detrimental to his recovery. Further, he admits that he was given medication after he complained of falling, although he was unhappy with its sedating effects. Since the plaintiff was

afforded treatment for his complaints and suffered no serious injury or recovery setback, he cannot establish deliberate indifference on the part of the defendants.

Finally, the plaintiff claims the defendants ignored his serious medical needs for non-medical reasons, *i.e.*, his race.   However, as set out above, the plaintiff has not provided sufficient factual detail demonstrating the defendants were deliberately indifferent to his medical recovery.   Further, his contention that it is an "undisputed fact" that the defendants will not touch an African-American inmate at BCCF is itself a conclusory assertion completely devoid of any factual support.   (Doc. 1 at 6); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).

### iii.   Conclusion

For all of the foregoing reasons, the plaintiff's Eighth Amendment claims against the defendants Christian, Clabo, Kirk, and Pavlakovic are due to be dismissed for failure to state a claim upon which relief may be granted.

### b.   Corizon Medical

"Generally, when the state contracts out its medical care of inmates, the obligations of the eighth amendment attach to the persons with whom the state contracts. Thus, [Corizon, a private entity,] can be a person acting under color of state law for the purposes of section 1983." *Howell v. Evans*, 922 F.2d 712, 724 (11th Cir. 1991) (additional internal citations omitted).   While a corporation providing prison

medical services may be liable under § 1983 if it is established that the constitutional violation was the result of the corporation's policy or custom, *see Buckner v. Toro,* 116 F.3d 450 (11th Cir.1997); *Ort v. Pinchback,* 786 F.2d 1105, 1107 (11th Cir.1986), such a corporation may not be held liable under § 1983 on the basis of *respondeat superior, see Harvey v. Harvey,* 949 F.2d 1127, 1129–30 (11th Cir. 1992); *Monell v. Department of Social Services,* 436 U.S. 658 (1978).  The plaintiff does not allege facts demonstrating deliberate indifference to his serious medical needs based upon policies or customs by Corizon Medical Services.  Accordingly, the claim against Corizon Medical Services is due to be dismissed for failure to state a claim upon which relief can be granted.

**B.   Hamilton Aged & Infirm**

At Hamilton A & I, the plaintiff complains he "still ha[s] not received a defibrillator monitor, no nursing assistants[] or physical therapists, and I was never examined by anyone after falling several times as a result of no nursing assistance to help me." (Doc. 1 at 6).  The plaintiff identifies no individual defendants associated with this conclusory complaint about health care services at Hamilton A & I, and his claim against Hamilton A & I is due to be dismissed for the same reasons set out in Section IV.A.2.b., *supra*.

## IV.  Recommendation

Accordingly, for the reasons stated above, the magistrate judge **RECOMMENDS** that this action be **DISMISSED** for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915A(b)(1).

## V.  Notice Of Right To Object

The plaintiff may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the clerk.  Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.  Failure to do so will bar any later challenge or review of the factual findings of the magistrate judge, except for plain error.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, (1985*), reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).

To challenge the findings of the magistrate judge, the plaintiff must file with the clerk of the court written objections which specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  Any objections to the failure of the magistrate judge to address any contention raised in the complaint also must be included.  Objections not meeting the specificity requirement set out above will not be considered by a district judge.

The filing of objections is not a proper vehicle to make new allegations or present additional evidence.  Furthermore, it is not necessary for the plaintiff to repeat legal arguments in objections.

The plaintiff may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is **DIRECTED** to serve a copy of this report and recommendation on the plaintiff.

**DATED** this 26th day of January, 2016.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE